UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLISAH LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 03631 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CITY OF CHICAGO, NIYELL POWELL, | ) | |
| APRIL FISHER, IRIS HOUSTON, AND | ) | |
| GLENN DAVIS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Allisah Love tried to pick up a friend's car at the Chicago impound lot in November 2007. R. 329, Third Am. Compl. ¶¶ 68, 93, 95. That visit to the impound lot gave rise to this lawsuit against the City of Chicago and four Chicago police officers, Niyell Powell, April Fisher, Iris Houston, and Glenn Davis. At this stage of the litigation, the remaining claims are a false arrest and detention claim under the Fourth Amendment, 42 U.S.C. § 1983, as well as state-law claims for false arrest, false imprisonment, and malicious prosecution.[1] Love alleges that the Defendant officers violated her Fourth Amendment rights when they seized and arrested her without cause, based only on the complaint of an off-duty officer working at the impound lot, despite Love having contacted police herself. Third Am. Compl. ¶¶ 83, 89-93. Love argues that she is entitled to a default judgment for

---

[1]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Citations to the docket are indicated with an "R." followed by the entry number and, if appropriate, a page or paragraph number. Various video and audio recordings were relied on by Love in the briefing and copies were supplied by the defense. The Clerk's Office shall make the recordings part of the record.

alleged discovery violations under Federal Rule of Civil Procedure 37(e). In the alternative, Love moves for summary judgment under Federal Rule of Civil Procedure 56. R. 478, Pl.'s Br. For the following reasons, both of the Love's motions are denied, and at the next status hearing, the Court will discuss trial scheduling with the parties.

## I. Background

The original allegations amounted to 15 counts, more than 19 defendants, and events spanning over a decade. *See* Third Am. Compl. In a May 2015 opinion, the Court dismissed all of the claims and defendants except for the remaining five defendants and the claims arising out of Love's arrest at the United Road Towing impound lot. R. 384, 5/7/15 Opinion and Order at 37-38. In evaluating Love's summary judgment motion, the facts are viewed in the defense's favor, and the defense is entitled to reasonable inferences.

In November 2007, Love went to a City of Chicago Auto Pound with Uylonda Henderson, Eddie Brantley, and Christopher Grooms to retrieve Henderson's car. Pl.'s Br. ¶ 78; *id.* Exh. SS, COC000018. When lot employees tried to drive Henderson's car out of its spot, the car would not start, presumably because the battery was dead. Third Am. Compl. ¶ 69. Brantley asked if he could either bring his car into the lot or push Henderson's car out of the lot so that he could jump-start her car with his own. *Id.* ¶ 72. The lot's employees told the group that neither was allowed, and that Henderson would need to pay a tow truck to move her car the 20-30 feet out of the lot. *Id.* ¶ 73.

In an attempt to get help from a manager of the lot, Love went inside the trailer that housed the lot's personnel. Third Am. Compl. ¶¶ 75-76. There, Defendant Powell—an off-duty Chicago Police Department officer—was working as a security guard. R. 489, Defs.' Statement of Add. Facts (DSOF) ¶ 5. When Love asked for his name, Powell falsely identified himself as "Officer Muhammed." Pl.'s Br. ¶ 112; *id.* Exh. N, Powell Dep. at 38:23-24, 39:1-3; AL00026, Track 2, 00:49:44-00:51:13. During the exchange, Powell asked Love to leave the trailer, after explaining that only car owners were allowed inside. *See* Pl.'s Br. ¶ 127; AL00026, Track 2, 00:49:44-00:51:13. According to Love, Powell did *not* ask Love to leave the impound lot itself—just the trailer—and Love contends that she promptly left. Pl.'s Br. ¶ 127. As detailed later in this Opinion, however, when viewed in Powell's favor, the video and audio of the interaction is not clear on this point, and Love stays in the trailer for at least 35 seconds after the request, debating her right to retrieve the car, and engaging in further discussion with Powell. AL00026, Track 2 00:50:35-51:19.

After leaving the trailer, Love called 911 a couple of times. In one call, she requested police assistance at the impound lot, explaining that Powell, who had said he was a Chicago Police Officer, refused to get a manager for her and that lot personnel would not let them jump-start Henderson's car. *See* AL00207, Tracks 2-3. She also asked for the phone number for the Office of Professional Standards (OPS)[2] to report him. *Id.* In another call to 911, Love asked the dispatcher to send a police

---

[2] The duties of OPS have since transitioned twice, first to the Independent Police Review Authority (IPRA), and now to the Civilian Office of Police Accountability.

sergeant to the lot. *Id.* at Track 1. In this call, Love said that Powell called the police on her after she mentioned that she would be contacting OPS. *Id.* Indeed, Powell did also call 911, requested police assistance, and reported that Love was "being very belligerent and cursing me out." Pl.'s Br. ¶107; AL00207, Track 4; DSOF ¶ 5. The dispatcher asked if Love had physically threatened Powell, and he said, "She said she'd call OPS on me." AL00207, Track 4. When later again asked if he had been threatened, Powell replied, "Yes." *Id.*

Officers April Fisher and Iris Houston received a dispatch at 8:59 pm asking for police assistance at the Auto Pound. DSOF ¶ 6; R. 488, Defs.' Summ. J. Resp. Br. Exh. 6. Sometime after Love made the 911 call in which she asked for a sergeant, Chicago Police dispatched Sergeant Glenn Davis to the lot. DSOF ¶ 15. Sergeant Davis spoke with Officers Fisher and Houston when he arrived. *Id.* ¶ 17. At this point, according to the on-duty officers on scene, none of them—including Davis, Houston, or Fisher—knew from the dispatch or investigation that Love had also called 911 for police assistance, nor that Powell had given Love a fake name. *Id.* ¶¶ 21-22. Love claims that the officers never spoke to her about her complaints or to ask her what had happened. Pl.'s Br. ¶ 146, 150; Third Am. Compl. ¶¶ 91-92. Officers Houston and Fisher arrested Love, based on Powell's allegations and Sergeant Davis's approval, and charged her with a misdemeanor offense of criminal trespass to state supported land under 720 ILCS 5.0/21-5. Pl.'s Br. ¶ 79; DSOF ¶ 1, 19; DSOF Exh. 1. The officers used an emergency handcuffing technique, because

they contend that Love resisted cuffing, DSOF ¶ 20, which Love disputes. Pl.'s Rep. Br. at 5.

Love was released from custody the next day. DSOF ¶ 24. Soon after her arrest, Love (and others) filed a federal-court suit and successfully asked the emergency judge to order the City to preserve "911 intake calls, dispatch tapes and event entries" from the Office of Emergency Management & Communications and the Office of Professional Standards, as well as "security video/tapes from the City of Chicago Auto Pound" from November 20, 2007. Mot. for Misc. Relief, *Grooms et al. v. Tencza et al.*, No. 1:07-cv-6176 (N.D. Ill. Nov. 21, 2007) ECF No. 30; Minute Entry on Mot. for Misc. Relief, *Grooms et al. v. Tencza et al.*, No. 1:07-cv-6176 (N.D. Ill. Nov. 29, 2007) ECF No. 34. But that order was later vacated due to lack of notice to the defendants. Minute Entry on Mot. to Vacate, *Grooms et al. v. Tencza et al.*, No. 1:07-cv-6176 (N.D. Ill. Dec. 20, 2007) ECF No. 38. The judge assigned to the 2007 case denied Love's later request to reinstate the preservation order, because the City had already stated that it would preserve all of the data within its possession.[3] R. 487, Defs.' Resp. to Mot. Default J., Exh. A. He referred the parties to a magistrate judge for all discovery matters. Later hearings before the magistrate judge dealt with the production and quality of the United Road Towing video; the City contends that Love did not make other specific preservation requests during these hearings. *Id.* Exhs. B, C, D. At an August 2008 hearing, the magistrate judge

---

[3] Specifically, the City took issue with Love's request that it preserve the security footage held by United Road Towing, an outside vendor that the City of Chicago uses for car impounds, because the recoding was outside of the possession, custody, and control of the Defendants.

ordered the City's counsel to contact United Road Towing to "inquire about quality of audio and video tape previously produced and to determine whether audio and video exists for outside of the building." *Id.* Exh. D. The City emailed Love later that day, informing her that it had spoken with United Road Towing, which agreed to provide the best copies available from both inside and outside the lot's trailer. *Id.* Exh. E.

In January 2008, Love's criminal case was stricken with leave to reinstate. DSOF ¶¶ 26-27. After various procedural twists and turns, Love's civil case was reassigned to this district judge. The remaining sets of claims are (1) under 42 U.S.C. § 1983, a Fourth Amendment claim for false arrest and detention; and (2) state-law claims for false arrest, false imprisonment, and malicious prosecution. 5/7/15 Opinion and Order at 37-38. (Also, the City remains in the case for an indemnification claim.) Love moves for a default judgment or, in the alternative, summary judgment, on each of her claims.

## II. Standards of Review

Love's first request is for a default judgment for alleged discovery violations. A default judgment might be an appropriate sanction when a party failed to take reasonable steps to preserve electronically stored information relevant to the litigation, and its later loss or destruction cannot be restored through additional discovery. *See* Fed. R. Civ. P. 37(e). If the loss of evidence prejudices the other party, then the court may "order measures not greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the court finds that the party *intentionally*

deprived the other party of the evidence, then the court may sanction the withholding side by issuing a negative presumption, dismissing the action (if the violation is committed by the plaintiff), or entering a default judgment. Fed. R. Civ. P. 37(e)(2). A default judgment is an appropriate sanction where (1) there is "a clear record of delay or contumacious conduct"; (2) where "other less drastic sanctions have proven unavailing"; or (3) where a party displays "willfulness, bad faith, or fault." *Domanus v. Lewicki,* 742 F.3d 290, 301 (7th Cir. 2014) (quoting *Maynard v. Nygren,* 332 F.3d 462, 467 (7th Cir. 2003), *overruled on other grounds by Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 781 (7th Cir. 2016)).

The other motion brought by Love is for summary judgment. In deciding Love's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party (here, the defense). *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and

must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Discussion

### A. Motion for Default Judgment

First addressing the motion for default judgment, the Federal Rules grant the district court substantial discretion over sanctions for discovery violations. Fed. R. Civ. P. 37(b)(2)(A); *see e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011) ("[D]istrict courts have wide latitude in fashioning appropriate sanctions.") (citation omitted). The entry of a default judgment is one of the most severe sanctions, and is generally appropriate only where a party has acted in bad faith, has willfully failed to comply with a discovery order, or has failed to comply with a discovery order due to the party's own fault. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976) (per curiam). Bad faith comprises conduct that is "either intentional or in reckless disregard of a party's obligations to comply with a court order." *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992). Similarly, fault suggests "objectively unreasonable behavior" rather than

a "mere mistake or slight error in judgment." *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000). In the Seventh Circuit, a district court must determine by a preponderance of the evidence that at least one of these blameworthy findings applies in order to impose the most severe sanctions. *See e360 Insight*, 658 F.3d at 642; *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 777 (7th Cir. 2016). A party's genuine and faultless inability to comply generally should not be sanctioned. *See Ramirez*, 845 F.3d at 776; *Nat'l Hockey League*, 427 U.S. at 640.

Because Love is alleging that the City of Chicago failed to preserve pertinent ordered discovery, sanctions are evaluated under Rule 37. To award sanctions, this Court must determine that: "1) the 'failing to produce' party had a duty to preserve or produce documents; 2) the 'failing to produce' party breached that duty or obligation to preserve or produce documents; 3) the culpability for the breach rises to a level of willfulness, bad faith or fault; 4) the party seeking production suffered prejudice as a result of the breach; and 5) an appropriate sanction can ameliorate the prejudice from the breach." *Porche v. Oden*, 2009 WL 500622, at *5 (N.D. Ill. Feb. 27, 2009). Specifically at issue is the City's alleged failure to preserve electronically stored information on Love's arrest, a responsibility that generally would have been triggered in 2007 when the arrest at the impound lot occurred. Thus, the version of Rule 37(e) in effect at that time controls. *See Elustra v. Mineo*, 595 F.3d 699, 703 (7th Cir. 2010) ("Since the amendments are not retroactive, we apply the Federal Rules as they existed at the time."). The 2007 version of Rule 37(e) stated, "Absent exceptional circumstances, a court may not impose sanctions

under these rules on a party failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system." Fed. R. Civ. P. 37(e) (2006) (amended 2015).

Love's motion alleges that the City committed four discovery violations.[4] Specifically, Love argues the City failed to (1) preserve and produce recordings of Love's calls to the OPS from November 20, 2007; (2) preserve and produce recordings of Love's calls to 311 (Chicago's non-emergency number) from November 20, 2007; (3) obtain a video-and-audio synchronized copy of the interior and exterior security footage from United Road Towing; and (4) timely produce documents to various FOIA requests. Pl.'s Br. ¶¶ 23, 34, 42, 45, 52, 59, 68.

## 1. OPS Call Recordings

Love contends that she made a call to report Officer Powell to the Office of Professional Standards shortly after calling 911 on November 20, 2007. Pl.'s Br. ¶¶ 23, 26-27. Love sought any existing recordings of that call. *Id.* ¶¶ 23, 34. But that production is not possible, because OPS did not have a policy of recording phone calls in November 2007, nor was any call actually recorded. Defs.' Default J. Resp. Br. at 7.

There is no duty to preserve that which does not exist. The record evidence does not support a finding that OPS recorded the call and then failed to produce it; it just was not recorded at all. Love concedes in her reply brief that the recording

---

[4] Love also asks for default judgment against each of the individual defendants—Fisher, Houston, Davis, and Powell—without describing any conduct implicating the individuals in the City's supposed discovery deficiencies. For this reason, default judgment is readily denied as to each of the individual defendants.

might not have been made, but pivots to an argument that the City should have then "produce[d] the written record of the OPS intake operator as it was recorded when the calls were made." Pl.'s Rep. Br. at 4-5. But the City was not obligated to predict that Love would want some other OPS document rather than the recording once it was plain that no recording existed at all. Love requested an OPS call recording. It did not exist; therefore, no sanction is appropriate.

### 2. 311 Call Recordings

In addition to the 911 calls already received, Love argues that her initial request for preservation also should have triggered preservation of audio files of her phone calls made to Chicago's informational, 311 non-emergency number. Pl.'s Br. ¶¶ 23, 34, 41. Her initial request encompassed 911 emergency calls, but the request did *not* suggest that Love also wanted the City to preserve any 311 calls. *See* Minute Entry on Mot. for Misc. Relief, *Grooms et al. v. Tencza et al.*, No. 1:07-cv-6176 (N.D. Ill. Nov. 29, 2007) ECF No. 34 (order entered to preserve "911 intake calls, dispatch tapes, and event entries…"). These files, if they existed, would be in the possession of the 311 Call Center. Defs.' Default J. Resp. Br. at 8. The Call Center only retains recordings for 30 days, so by the time that Love requested them in an email on April 5, 2016—more than eight years after the events at issue—the recordings had long been discarded.[5] *Id.* at 8; *id.* Exh. G. Because Love did not make a timely request, no discovery violation occurred as to the 311 calls.

---

[5] Defense Counsel verified with the 311 Center and OEMC that there are not any saved calls from Love to 311 for November 20, 2007. Defs.' Default J. Resp. Br. at 8 n.4. The offices also searched their records for service requests for the Doty Road Auto Pound, but

It is true that parties have a duty to preserve "evidence which may be relevant to the litigation" once a party knows, or should have known, that litigation was imminent. *In re African-American Slave Descendants' Litig.*, 2003 WL 24085346, at *3 (N.D. Ill. July 15, 2003) (citing *Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 806-07 (7th Cir. 1995)); *see also Trask-Morton v. Motel 6 Operating, L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). This duty encompasses any relevant evidence that the party knew or could reasonably foresee would be relevant to the action. *Danis v. USN Communications, Inc.*, 2000 WL 1694325, at *32 (N.D. Ill. Oct. 20, 2000). But sanctions are not appropriate where a piece of evidence is destroyed in the regular course of a party's retention policies, as long as the party was not on notice that it had a duty to preserve the document at issue. *In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, 2013 WL 5377164, at *3 (S.D. Ill. Sept. 25, 2013) (finding that party was "not under a duty to preserve documents relevant to this litigation [at the time the relevant] file was destroyed.").

Here, Love essentially argues that whenever a non-emergency call to 311 is transferred to the 911 call center, and then a police officer is dispatched in response to that call, the City should know that it must preserve the 311 call in addition to the 911 call. Pl.'s Br. ¶ 40. But not every police dispatch originates from a 311 call; obviously, many originate from calls directly to 911, like the ones that Love later made on November 20. It simply is not intuitive that the City generally must preserve 311 calls that get transferred to 911, because the caller is naturally

---

did not find that any service requests to that location had been made on November 20, 2007. *Id.*

expected to repeat any pertinent information to 911; indeed, it makes sense that the call to 311 will almost always contain a subset of the information provided to 911. Nor did the City fall short in this case specifically, where Love has not pointed to any evidence showing she affirmatively put the City on notice that relevant 311 call recordings existed. Her initial request for the calls that would eventually be identified as the 311 calls was not explicitly directed at 311, and the request was made over eight years after the incident. *See* Defs.' Default J. Resp. Br., Exh. G ("Finally, the city of Chicago has never provided me with a recording, or specific written documentation of the first call made by me for police service at the Auto Pound on Doty Road on November 20, 2007.").

Even if the City should have known that Love's request for 911 calls necessarily encompassed any 311 calls from the same date, Love fails to show that any records were destroyed in bad faith. If they ever existed, then it is reasonable to believe that the City followed the normal course of the 311 Call Center's 30-day retention policy. Defs.' Default J. Resp. Br. at 8. Under Federal Rule of Civil Procedure 37 (the version in effect in 2007), this routine compliance with the retention policy is not sanctionable absent extraordinary circumstances, none of which are present here. No sanctions are warranted on the 311 calls.

### 3. Synchronized Video from Auto Lot

To understand the dispute over the video, some background is needed. As noted earlier, the car lot where Love was arrested is owned by a private company, United Road Towing, rather than the City. A trailer on the lot has security cameras

monitoring the inner office. Earlier in discovery, Love obtained audio and video footage for a four-hour period recorded during the evening of her arrest. But the sound and the video are out of synch by some amount of time, likely less than one minute. That is to say, the audio on the recording does not match exactly in time with what appears on the video image. Love moved to compel United Road Towing to produce a better copy of the interior video and any existing video of the exterior of the lot. *See* 8/27/08 Minute Entry, *Grooms et al. v. Tencza et al.*, No. 1:07-cv-6176 (N.D. Ill. Aug. 27, 2008) ECF No. 75. The magistrate judge granted Love's motion and issued an order to the assistant general manager of United Road Towing, David Corcoran. *Id.*; Defs.' Default J. Resp. Br. at 9; Defs.' Default J. Resp. Br., Exh. D. The order directed United Road to produce "the best copies available of the recording of the incident at issue" and that production "shall include any video and/or audio tapes for both the interior and exterior of the building." 8/27/08 Minute Entry Statement, *Grooms et al. v. Tencza et al.*, No. 1:07-cv-6176 (N.D. Ill. Aug. 27, 2008) ECF No. 75; Defs.' Default J. Resp. Br., Exh. D.. There is no reason to believe that, by the date of that order—August 27, 2008—there was any better copy of the video, and indeed there is no reason to think that there ever was any better copy of the video. The City did contact United Road Towing and ask for the best available video footage. Defs.' Default J. Resp. Br. at 5; *id.* Exh. F. (For the exterior video, no recorded footage exists. R. 469, Frank Morrone Aff.) After the case's reassignment to this Court, the City was directed again to confirm that no original video was available, R. 420, 1/26/2016 Minute Entry, and United Road Towing confirmed that

14

it had a 90-day retention period, R. 425, Exh. A, James Ferguson Aff., which meant that the video would have been discarded (or overwritten) around February 20, 2008 (nearly 10 years ago now).

In light of those discovery efforts during the early stages of the case (or more precisely, during the early stages of *Grooms et al. v. Tencza et al.*, No. 1:07-cv-6176, when Love was a plaintiff in that case), as well as the City's confirmation efforts later in this case, the Court concludes that no negligence, let alone bad faith, has been demonstrated to warrant sanctions of any kind. *See Rodgers, II, v. Lowe's Home Centers, Inc.*, 2007 WL 257714, at *1 (N.D. Ill. Jan. 30, 2007) (loss of store surveillance video did not warrant default judgment, and that sanction is "especially inappropriate where the proof of willful and bad faith destruction is wanting."). United Road Towing produced what it could back in 2008, and there were follow-up efforts to ensure that there was nothing better. And it would be especially inapt to impose sanctions on the City or the individual Defendants, who were not responsible for producing United Road Towing's video. The motion for sanctions as to the video is denied.

### 4. FOIA Request for Documents

In the sanctions motion, Love also argues that the City's failure to completely or timely answer her Freedom of Information Act requests amounts to a discovery violation in this lawsuit. Pl.'s Br. ¶ 59. She contends that the City did not produce certain OPS complaints, recordings of Administrative Hearings, a Chicago Police Department directive about interviewing witnesses, or the star numbers for certain

police officers that she requested in several FOIA requests in 2007. *Id.* ¶¶ 60, 64. The City, however, claims—and Love does not refute—that all of the requested information has been provided during discovery in the course of the case. Defs.' Default J. Resp. Br. at 10. In any event, the remedy for an alleged FOIA violation is a separate action in state court, rather than to pursue discovery sanctions in federal court. *See* 5 ILCS 140/11(c). This too is not a basis for sanctions, so Love's motion for default judgment is denied.

## B. Motion for Summary Judgment

Moving on from the motion for default judgment, the Court now considers Love's alternative motion for summary judgment on each of her claims. For the following reasons, Love's motion for summary judgment is denied on each count. This case must go to trial.

### 1. Fourth Amendment & State-Law Claims

To prevail on her Fourth Amendment claim for false arrest and detention, as well as on the state-law claims for false arrest, false imprisonment, and malicious prosecution, Love must show that she was arrested and detained without probable cause (and, for the malicious prosecution claim, prosecuted without probable cause). *See Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 344 (7th Cir. 2010) ("A § 1983 false imprisonment claim seeks damages for injury caused by the plaintiff's detention without probable cause."). That is because probable cause is an element of each of those claims: probable cause to arrest is "an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or

malicious prosecution." *Burritt v. Ditlefsen,* 807 F.3d 239, 249 (7th Cir. 2015) (quoting *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006)).[6] So if there is a genuine dispute over whether there was probable cause to arrest Love, then summary judgment cannot be granted in her favor. And probable cause does not demand certainty: if "at the time of the arrest, the facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense," then probable cause exists. *Neita v. City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016) (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)). "Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003).

Here, the police officers argue that a reasonable jury can find that there was probable cause to arrest Love for trespass on state-supported property under 720 ILCS 5/21-5(a). Defs.' Summ. J. Resp. Br. at 5. The pertinent part of that statute says:

> Whoever enters upon land supported in whole or in part with State funds ... or remains upon such land or in such building *after receiving notice from the State or its representative to depart*, and who thereby interferes with another person's lawful use or enjoyment of the building or land ... .

---

[6] One caveat worth noting with regard to malicious prosecution claims: it is possible that, even if probable cause existed at the time of an arrest, later investigation and developments might so undermine probable cause that, from that point forward, the continued prosecution is not supported by probable cause.

720 ILCS 5/21-5(a) (eff. Jan. 1, 2006)[7] (emphasis added).[8] As the emphasized text dictates, even if a person *initially* is permitted to go into a building or onto land, the visitor still violates the trespass law if he or she remains there after the occupant notifies the person to leave.

With regard to the police officers—Houston, Fisher, and Davis—there is no doubt (especially viewing the evidence in their favor) that a reasonable jury can find that the officers had probable cause to arrest Love for trespassing by remaining on the property after being told to leave. The dispatchers sent Officers Houston and Fisher to the scene based on 911 calls from both Love *and* Powell. *See* Pl.'s Br. ¶¶ 80, 113; Defs.' Summ. J. Resp. Br. at 6; DSOF ¶¶ 6-7; *see also* AL00207, Tracks 1-4. Powell's call described Love as causing a disturbance and refusing to leave. *See* AL00207, at Track 4. According to Houston and Fisher, after they arrived on the scene, Powell told them that he had asked Love to leave and that she had refused. DSOF ¶ 11. Viewed in the defense's favor, Davis too received the same information, relayed from Houston and Davis. *Id.* ¶ 17. If the jury credits that version of events

---

[7] The current version of the statute, effective January 1, 2015, makes only nominal changes to the wording.

[8] The parties do not appear to dispute the State-supported funding of the auto lot, but in any event the general statute forbidding trespass to real property is similar. 720 ILCS 5/21-3(a)(3) (eff. Aug. 21, 2007) (defining trespass to include "remain[ing] upon the land of another, after receiving notice from the owner or occupant to depart"); *see also People v. Kraft*, 660 N.E. 2d. 114, 117 (Ill. App. Ct. 1995); *Zimmerman v. Doran*, 807 F.3d 178, 183 (7th Cir. 2015). Under governing Fourth Amendment case law, an arrest is proper if officers had probable cause to arrest for *any* offense, even one that the suspect is not ultimately charged with. *See Williams v. Rodriguez*, 509 F.3d 392, 405 (7th Cir. 2007); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). If the defense wants to invoke this doctrine at trial, then the defense must propose jury instructions on the specific alternative statutes as part of the proposed pretrial order preparation.

(which must be assumed at this summary judgment stage), then the jury reasonably can find that the officers had probable cause to arrest for trespass.

Love complains that the officers should not have relied just on Powell's word to make the arrest. But probable cause generally may be based on the "complaint of a single witness or putative victim … unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003); *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007). Here, there was nothing suspicious about the circumstances, as reported by Powell, that dictated the officers reject—on the spot, at the scene—his version of the events. Indeed, Officers Houston and Fisher also testified that, during their own encounter with Love, she was combative and belligerent, which was consistent with what Powell told the officers. Defs.' Summ. J. Resp. Br. at 6; DSOF ¶ 14. On top of that, Houston and Fisher also testified that, once they realized Love did not have an impounded car at the auto lot property, they asked Love to leave the lot, but she refused. DSOF ¶ 13. In the officers' eyes, that would support Powell's version of the events and add to the probable cause.

Love also contends that the officers did not do enough to further investigate Powell's version of events, but officers generally have "no duty to investigate extenuating circumstances or search for exculpatory evidence once probable cause has been established via the accusation of a credible witness." *Burritt,* 807 F.3d at 250-51. Generally speaking, arresting officers do not need to actively search for

information to undermine probable cause once it is established. *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004) ("Once a police officer discovers sufficient facts to establish probable cause, she has no constitutional obligation to conduct any further investigation in the hope of discovering exculpatory evidence."). As discussed earlier, there was nothing about the circumstances that required—as a matter of Fourth Amendment law—the officers to investigate further. At the very least, a reasonable jury can conclude that the officers had probable cause.[9]

The summary judgment motion as against Powell is a closer question. Powell was off-duty at the time and did not effectuate the arrest. But as the complaining witness, it is possible for him to be held responsible, at the very least, on the state-law claims for false arrest, false imprisonment, and malicious prosecution. Still, probable cause is a required element of each claim, so if there is a genuine dispute over probable cause, then summary judgment cannot be granted. Powell did not file a response to the summary judgment motion, but when viewed in the light most

---

[9] As an alternative argument, the police officers also argue that summary judgment is not warranted in light of qualified immunity. Defs.' Summ. J. Resp. Br. at 9-10. Qualified immunity bars liability against officers whose conduct does not violate a clearly established constitutional right. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). An officer is immune from liability for an arrest if (a) there was probable cause to arrest or (b) he or she reasonably, but incorrectly, concluded that there was probable cause. *Id.* Here, there is no need to address qualified immunity because Love's summary judgment motion is denied. But it is worth noting that really Defendants would have needed to cross-move for summary judgment in order to invoke the doctrine. Qualified immunity is *not* a jury question, but instead one that the Court decides either via a motion to dismiss, for summary judgment, or judgment as a matter of law. The doctrine is not relevant for purposes of merely *responding* to a plaintiff's summary judgment motion.

favorable to him, the evidence that was supplied does not warrant summary judgment.

Love contends that Powell never asked her to leave the auto impound lot property. Pl.'s Br. ¶ 129. According to her, Powell only ever requested she leave the *trailer*, and she says that she promptly did so. *Id.* ¶¶ 86, 95. The video and audio of the in-trailer encounter establishes that Powell pointed to a sign, which Love read out loud, saying something to the effect that only owners of impounded cars are allowed inside the trailer. AL00026, Track 2 00:50:28-00:50:35. The video and audio are not crystal clear, but when viewed in Powell's favor, Love immediately argues to Powell that she has been participating in the proceedings concerning the car, so she is entitled to retrieve the car, and she and Powell have some additional back-and-forth that is difficult to discern. AL00026, Track 2 00:50:35-00:51:19. At the very least, Love remained in the trailer until the 00:51:19 mark in the video, when she asks Powell for his name, and he falsely responds, "Officer Mohammad," AL00026, Track 2 00:51:12, and they exchange some more words. With this evidence, a reasonable jury could find that Love remained in the trailer after being notified that she must leave.

What's more, even under Love's version of the events, there *must* have been additional interaction between her and Powell that is not captured on video (or at least not audibly captured on the video). For example, the video does not include Love's threatening to call OPS to complain about Powell, but by Love's own assertion, this exchange did occur and it happened after they left the trailer. *See*

Pl.'s Br. ¶¶ 122, 123. Powell too refers to the potential OPS call in his own call to 911. AL00026; AL00207, Track 4. So there was more interaction between Love and Powell than just the in-trailer conversation, at least when the evidence is viewed in Powell's favor. And viewing it that way, after Love left the trailer, Powell's version of events is that he told Love to leave—not just the trailer—and that she was belligerent and cursed at him. *See* R. 489-2, Exh. 4, Powell Dep. at 215:12-21. Under those circumstances, if credited by the jury, Powell had probable cause to believe that Love had trespassed both as to the trailer and to the auto lot itself.

In what she believes is a "gotcha" moment, Love argues that Powell conceded that he asked Love to leave only the *trailer*. Pl.'s Br. ¶ 86. Again, however, summary judgment is not warranted. First, as explained earlier, Love did not immediately leave the trailer, and instead debated whether she could stand in the owner's stead because she participated in the court proceedings. Second, the excerpt of the deposition that Love relies on is not clear on the point. Specifically, during the deposition, Powell testified that he asked Love "to leave, she refused to vacate the premises after numerous requests to vacate said premises." Pl.'s Br., Exh. KK, Powell Dep. at 42:2-4. Following up on that testimony, Love (acting *pro se*) asked, "And when you say 'said premises,' you mean inside of the —," and Powell responded, "Auto pound number two." *Id.* at 42:5-7. So Powell testified that he did ask Love to leave the auto lot, not just the trailer. It is true that Love's next question was, "Which is trailer number two?", and Powell responded, "Yes." *Id.* at 42:8-9. But that ambiguous testimony was not buttoned-down enough, because the

question could be interpreted to simply ask that the trailer assigned to auto pound number two is designated as trailer number two. Indeed, earlier in the deposition's background questioning, Powell was asked whether he was working a part-time job; he said yes. Pl.'s Br., Exh. DD, Powell Dep. at 18:1-2. When asked where, Powell answered, "Auto pound. Chicago auto pound, number two." *Id.* at 18:3-5**.** That reinforces—at least a jury could reasonably find—that when Powell said he asked Love to vacate the "premises," and he testified that "premises" meant auto pound number two, he was saying that, at some point in time, he asked her to leave the lot, not just the trailer. Lastly, the chronology in the deposition was not clear (at least not in the excerpts), because the questioning did not pin down when Powell made what requests, and that would have confirmed or refuted Love's position that Powell was supposedly conceding that he asked Love to leave only the trailer. In sum, the deposition testimony will be proper impeachment evidence, but it is not the clear concession that demands summary judgment be entered against Powell.

The Court emphasizes that, especially as to Powell, rejecting Love's summary judgment does *not* mean that the Court is finding probable cause actually *did* exist. The jury will evaluate the evidence without the summary-judgment lens (which is in favor of the non-movants), and will be free to accept either version of the facts. But the summary judgment motion must be denied.

## 2. § 1983 Conspiracy

Love also alleges that Officers Houston, Fisher, Davis, and Defendant Powell violated 42 U.S.C. § 1983 by conspiring to arrest her without any probable cause to

do so. *See* Pl.'s Br. ¶¶ 124, 134, 146-47. Because conspiracy is not an "independent basis of liability" in § 1983 claims, Love is not entitled to summary judgment on this claim. As Love failed to establish an underlying constitutional violation—because her Fourth Amendment claims above have failed—any corresponding conspiracy claim also necessarily fails. *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). In failing to establish liability on any constitutional claim, Love has failed to show that no genuine issue of material fact exists for the purposes of summary judgment. This Court does not need to further expound on whether Love has expressly shown any conspirational agreement among the Defendants, and it declines to do so here.

## IV. Conclusion

In light of the absence of any sanctionable discovery violations, and in light of the dispute over probable cause, Love's motion for default judgment and, alternatively, for summary judgment is denied. As the case heads for trial, some important points are necessary to make. First, Powell is *pro se*, so the Clerk's Office shall remove the appearance of attorney Molly Thompson on his behalf. The Court warns Powell that a failure by him to participate in the proposed pretrial order preparation, as well as to attend court hearings going forward, might very well result in a default judgment against him for failing to defend the case. Fed. R. Civ. P. 55(a). Second, long ago, the Court permitted attorney Shanita Straw, whom the Court had recruited as pro bono counsel for Love, to withdraw from the representation because of Love's unreasonable conduct toward Straw. R. 214. The

Court had forewarned Love that no additional lawyer would be recruited if she acted unreasonably. *Id.* But the Court is willing to give one more chance to Love, now that the case is headed to trial. If Love wants another recruited attorney, then she shall file a motion, along with a current *in forma pauperis* financial affidavit, by November 20, 2017. The Court notes that if Powell financially qualifies, then he too may file a motion for recruitment (and the financial affidavit) by the same deadline. The status hearing of November 15, 2017 is reset for December 6, 2017, at 11 a.m.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 7, 2017